1

2

3

4

5

6

7

8

9

10

11

12            **IN THE UNITED STATES DISTRICT COURT**

13           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

14

15

16    ADAN JUAREZ, et al.,                      CASE NO. CV F 13-0485 LJO SAB

             Plaintiffs,              **ORDER ON DEFENDANT'S F.R.Civ.P. 12**
17                                    **MOTION TO DISMISS**
         vs.                         (Doc. 4.)
18
     SUNTRUST MORTGAGE, INC.,
19
             Defendant.
20    _____/

21                                  **INTRODUCTION**

22        Defendant Suntrust Mortgage, Inc. ("Suntrust") seeks to dismiss as legally barred and

23   insufficiently pled plaintiffs Adan Juarez ("Mr. Juarez") and Rosa Juarez' ("Ms. Juarez'") claims arising

24   from Suntrust's handling of the failed modification of the Mr. and Ms. Juarez' (collectively the

25   "Juarezes'") loan secured by their Stanislaus County property ("property"). The Juarezes contend that

26   they have pled "fact-specific allegations" to support their actionable claims. This Court considered

27   Suntrust's F.R.Civ.P. 12(b)(6) motion to dismiss on the record without a hearing. *See* Local Rule

28   230(g). For the reasons discussed below, this Court DISMISSES this action.

                                            1

# BACKGROUND[1]

## The Juarezes' Loan And Default

On March 10, 2008, the Juarezes obtained a $417,000 loan secured by a deed of trust on the property. The Juarezes made their $2,367.69 monthly payments up to April 2009 when they defaulted. Suntrust serviced the loan since its origination.

## Loan Modification Trial

The Juarezes requested a loan modification, and Suntrust presented a Home Affordable Modification Trial Period Plan ("trial plan"), effective January 1, 2010 and which required four trial period payment of $790.03 per month. The Juarezes executed the trial plan and returned it to Suntrust. The trial plan addresses Suntrust's determination of loan modification and its section 2.G. states:

> I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this plan. . . .

The trial plan's section 3 continues:

> **The Modification.** I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Lender will determine the new payment amount. If (1) my representations in Section 1 were and continue to be true in all material respects; (2) I comply with the requirements in Section 2; (3) I provide the Lender with all required information and documentation; and (4) the Lender determines that I qualify, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. (Bold in original).

The Juarezes made the four trial payment under the trial plan. Suntrust failed to modify permanently the Juarezes' loan. The Juarezes continued to may 12 monthly trial plan payments and attempted to discover whether they would be given a permanent loan modification. The Juarezes were told to keep making trial payments.

After cashing 11 of the Juarezes' trial payments, Suntrust rejected the 12ᵗʰ payment and sent the

---

[1]  This factual recitation summarizes Juarezes' operative Complaint ("complaint") and other matters which this Court may consider.

Juarezes a letter to deny permanent loan modification based on the Juarezes' insufficient income, which the Juarezes were never told was an issue.

The Juarezes applied for another loan modification and received an offer for a monthly payment $80 less than their original payment.  The Juarezes received no requested clarification and were asked to send additional or duplicate documentation.  Suntrust sent the Juarezes what they characterize as a "slew of incoherent communications."

### Property Foreclosure

On January 19, 2012, property foreclosure was initiated with the recording of a notice of default and election to sell under deed of trust.  A notice of trustee's sale was recorded to set a May 16, 2012 sale date.  Suntrust sent May 18, 2012 letters to ask the Juarezes for financial information to address loan modification.  A foreclosure sale of the property was conducted, and a trustee's deed upon sale was recorded on October 23, 2012.  The Juarezes are subject to unlawful detainer.

### The Juarezes' Bankruptcies

On May 16, 2012, Mr. Juarez filed a pro se voluntary Chapter 7 bankruptcy which was dismissed for failure to appear at a creditors' meeting.  On September 11, 2012, Mr. Juarez filed a voluntary Chapter 13 bankruptcy which was dismissed for failure to file timely documents.  On October 11, 2012, Mr. Juarez filed a pro se voluntary Chapter 7 bankruptcy which was dismissed for failure to file timely papers.

On January 23, 2013, Ms. Juarez through counsel filed a voluntary Chapter 7 bankruptcy petition. The petition's Schedule B lists no "Other contingent and unliquidated claims of every nature."  On April 16, 2013, Ms. Juarez' bankruptcy was dismissed for failure to appear at a creditors' meeting.

### The Juarezes' Claims

On March 7, 2013, the Juarezes filed their complaint in Stanislaus County Superior Court prior to Suntrust's removal to this Court.  The complaint alleges that the Juarezes "were led to believe for three years that they were candidates for a loan modification" and that Suntrust took advantage of the Juarezes' "trust and situation" to foreclose on the property.  The complaint further alleges that "Suntrust misled Plaintiffs into believing they would be given a loan modification" and "continuously lost their documents, demanded documents which had already been produced, and provided misleading

3

1   information as to the status of the modification process."  The complaint alleges negligence and breach

2   of contract claims as well as claims under the California Unfair Competition Law ("UCL"), Cal. Bus.

3   & Prof. Code, §§ 17200, et seq., and the California Fair Debt Collection Practices Act ("RFDCPA"),

4   Cal. Civ. Code, §§ 1788, et seq.  The claims will be discussed in greater detail below.

5   **DISCUSSION**

6   **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

7   Suntrust characterizes this action as "an attempt to stave off eviction" and seeks to dismiss the

8   complaint's claims as legally barred and insufficiently pled.  The Juarezes contend their claims survive

9   dismissal given the allegations of Suntrust's mishandling of the loan modification process.

10   A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal

11   theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica*

12   *Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297

13   (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*,

14   250 F.3d 729, 732 (9th Cir. 2001).

15   In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

16   the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

17   can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80

18   F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that

19   are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

20   *Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not

21   assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*

22   *Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove

23   facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been

24   alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*,

25   459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that

26   the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney,*

27   *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

28   A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires

4

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).   Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).   In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> . . . First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

5

1   *Iqbal*, 556 U.S. 662, 678-679, 129 S.Ct. at 1949-1950.

2   Moreover, a court may consider exhibits submitted with the complaint. *Durning v. First Boston*

3   *Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);*Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162,

4   n. 2 (C.D. Cal. 2003). A "court may consider evidence on which the complaint 'necessarily relies' if:

5   (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no

6   party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d

7   445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may

8   assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States*

9   *v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a

10  Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are

11  based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[2] A "court may disregard allegations

12  in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck*

13  *Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston*

14  *Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

15  Lastly, under F.R.Evid. 201, a court may take judicial notice of "matters of public record." *Lee*

16  *v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500,

17  504 (9th Cir. 1986) ("On a motion to dismiss, we may take judicial notice of matters of public record

18  outside the pleadings); *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986).

19  With these standards in mind, this Court turns Suntrust's challenges to the complaint's claims.

20  **Judicial Estoppel**

21  Suntrust contends that judicial estoppel bars the complaint's claims in that the Juarezes failed

22  to disclose the claims in their bankruptcies. The Juarezes respond that judicial estoppel does not apply

23  in absence of evidence that "the bankruptcy courts accepted the Plaintiffs' position as true and granted

24  relief on that basis."

25  / / /

26

27  [2]      "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim
depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not
dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document

28  in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

### General Principles

Judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). "Judicial estoppel is a flexible equitable doctrine based on the estoppel of inconsistent positions in which a litigant who has obtained one advantage through the court by taking a particular position is not thereafter permitted to obtain a different and inconsistent advantage by taking a different position." *In re JZ L.L.C.*, 371 B.R. 412, 420 (9th Cir. BAP 2007).

The Ninth Circuit has explained the rationale of judicial estoppel:

> The policies underlying preclusion of inconsistent positions are general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings. . . . Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts. . . . Because it is intended to protect the dignity of the judicial process, it is an equitable doctrine invoked by a court at its discretion.

*Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990), *cert. denied*, 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991).

The U.S. Supreme Court has further explained: "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555 (1895).

Judicial estoppel applies to inconsistent positions taken in the same and multiple litigation. *See Rissetto*, 94 F.3d at 605 ("We now make it explicit that the doctrine of judicial estoppel is not confined to inconsistent positions taken in the same litigation."); *see also Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 783 (9th Cir. 2001) ("The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases."). Moreover, "application of judicial estoppel does not turn on whether the estopped party actually benefitted from its attempt to play fast and loose with the court." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 324 (3rd Cir. 2003), *cert. denied*, 541 U.S. 1043, 124 S.Ct. 2172 (2004).

/ / /

***Bankruptcy Context***

Suntrust argues that judicial estoppel applies in that the bankruptcy court and trustee relied on the Juarezes' representations that they had no actionable claims.

"In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Hamilton*, 270 F.3d at 783; *see Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir.1992) (failure to give notice of a potential cause of action in bankruptcy schedules and disclosure statements estops the debtor from prosecuting that cause of action); *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir.1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000) (holding that a debtor is barred from bringing claims not disclosed in its bankruptcy schedules); *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 572 (1st Cir.), *cert. denied*, 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993) (debtor who obtained relief on the representation that no claims existed cannot resurrect such claims and obtain relief on the opposite basis); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988) (debtor's failure to list potential claims against a creditor "worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect," and debtor is estopped by reason of such failure to disclose).

The rationale to apply judicial estoppel in the bankruptcy context "is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. . . . The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete." *In re Coastal Plains, Inc.*, 179 F.3d at 208 (quoting *Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y.1996)).

The Bankruptcy Code and Rules "impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *In re Coastal Plains*, 179 F.3d at 207-208; *Hay*, 978 F.2d at 557; 11 U.S.C. § 521(1). The "debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the

8

bankruptcy proceeding." *Hamilton*, 270 F.3d at 785.   The "integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *In re Coastal Plains*, 179 F.3d at 208.

Suntrust invokes judicial estoppel in that none of the Juarezes' bankruptcy schedules disclosed the complaint's claims.

The Juarezes argue that the failure to disclose their claims on their bankruptcy schedules is irrelevant in the absence of evidence of the Juarezes' advantage in their bankruptcies which were dismissed without plan confirmation or entry of discharge.   "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." *Gottlieb v. Kest*, 141 Cal.App.4th 110, 139, 46 Cal.Rptr.3d (2006) (internal quotes and editing omitted).

The Juarezes advocate a "no harm, no foul" logic which this Court will not adopt.   The integrity of the bankruptcy system must not be overlooked in that the need to disclose claims "stems from the requirement that a debtor seeking the shelter provided by federal bankruptcy laws disclose all legal or equitable property interests to a bankruptcy court.... [¶] The omission of a cause of action or claim 'from . . . mandatory bankruptcy filings is tantamount to a representation that no such claim existed.'" *Autos, Inc. v. Gowin*, 330 B.R. 788, 795 (D. Kan. 2005) (citations omitted).   Moreover, the Juarezes filed four bankruptcies, none of which disclosed their claims, to advance questionable tactics to postpone foreclosure sales of the property and permit the Juarezes to remain on the property without paying their original loan obligation.   The Juarezes' absence of plan confirmation or discharge in their bankruptcies is irrelevant in that their bankruptcies were dismissed based on their own inaction and abuses of the bankruptcy system.   Due to "the singular nature of bankruptcy law," the Juarezes "obtained a legal benefit from the prior statements as soon as they were made. The filing of the bankruptcy petitions resulted in an automatic stay." *See Thomas v. Gordon*, 85 Cal.App.4th 113, 119, 102 Cal.Rptr.2d 28 (2000).

Judicial estoppel warrants dismissal of the complaint's claims to further orderly administration of justice and judicial dignity.   Of key importance, "application of judicial estoppel does not turn on whether the estopped party actually benefitted from its attempt to play fast and loose with the court." *Krystal Cadillac-Oldsmobile*, 337 F.3d at 324.   Judicial estoppel "preserves the integrity of the courts

1   by preventing a party from abusing the judicial process through cynical gamesmanship." *Teledyne*

2   *Industries, Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir. 1990). Application of judicial estoppel here

3   serves the doctrine's purposes, chiefly avoidance of advantage to the Juarezes through judicial

4   gamesmanship.

5                                    **Ms. Juarez' Standing**

6          Suntrust argues that Ms. Juarez lacks standing to pursue claims in that her claims belong to her

7   bankruptcy estate and are subject to the trustee's pursuit.

8          11 U.S.C. § 541(a)(1) provides that bankruptcy estate property includes "all legal or equitable

9   interests of the debtor in property as of the commencement of the case." Bankruptcy estate property

10  further includes "property that the debtor acquires after the commencement of the case but before the

11  case is closed, dismissed, or converted." 11 U.S.C. § 1306(a)(1). Suntrust notes that a debtor's potential

12  or actual claim is property belonging to the bankruptcy estate. *See Sierra Switchboard Co. v.*

13  *Westinghouse Elec. Corp.*, 789 F.2d 705, 709 (9th Cir.1986) ("regardless of whether a personal injury

14  claim is transferable or assignable under state law, such claims become part of the bankruptcy estate

15  under section 541").

16          "[O]nce a trustee is appointed, a debtor loses all authority to litigate any claim for or against the

17  estate." *In re Flanagan*, 503 F.3d 171, 179 (2nd Cir. 2007). "[T]he trustee, not the debtor or the debtor's

18  principal, has the capacity to represent the estate and to sue and be sued." *In re Gulph Woods Corp.*, 116

19  B.R. 423, 428 (E.D. Pa. 1990). "The rights of action arising upon the contracts or property of the

20  debtors, not yet resolved into suit, pass to the trustee as a representative of the estate." *In re St. Onge*,

21  317 B.R. 39, 44-45 (D. N.H. 2004). "The trustee is granted complete authority and discretion with

22  respect to the prosecution and defense of any litigation of the Debtor's estate." *In re Gulph Woods Corp.*,

23  116 B.R. at 428.

24          After a trustee is appointed, "a Chapter 7 debtor no longer has standing to pursue a cause of

25  action which accrued at the time the Chapter 7 petition was filed" because  the trustee  has sole the

26  authority to prosecute and/or settle claims. *Anderson v. Acme Markets, Inc.,* 287 B.R. 624, 628 (E.D.

27  Pa. 2002) ("The Trustee is the sole representative of the estate. . . . As such, the Trustee has the exclusive

28  right to prosecute causes of action that are property of the bankruptcy estate.") The "bankruptcy code

1  endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate." *Estate of Spirtos*

2  *v. One San Bernardino County Superior Court Case Numbered SPR 02211*, 443 F.3d 1172, 1176 (9th

3  Cir. 2006).

4      Suntrust argues that in the absence of trustee abandonment of Ms. Juarez' claims, Ms. Juarez

5  lacks standing to pursue the claims in this action.  The Juarezes offer no opposition to Suntrust's points.

6  This Court construes the lack of opposition as their concession that Ms. Juarez lacks standing to further

7  warrant dismissal of her claims.  Moreover, at the time this action was filed, Ms. Juarez was in

8  bankruptcy to render her claims subject to the trustee's exclusive rights to pursue.

9                                    **Failure To Tender Indebtedness**

10      Suntrust further challenges the complaint's claims given the Juarezes' failure to tender, and

11  inability to tender, the amount owing on their outstanding indebtedness.  The Juarezes challenge a need

12  to tender in that their claims address Suntrust's "actions throughout the loan modification process," not

13  the foreclosure process.

14      "When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has

15  taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any

16  cause of action for wrongful foreclosure." *Alicea v. GE Money Bank*, 2009 WL 2136969, at *3 (N.D.

17  Cal. 2009).

18      A defaulted borrower is "required to allege tender of the amount of [the lender's] secured

19  indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah*

20  *v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S.

21  1081, 117 S.Ct. 746 (1997).  "A party may not without payment of the debt, enjoin a sale by a trustee

22  under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale,

23  even though the statute of limitations has run against the indebtedness."  *Sipe v. McKenna*, 88

24  Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

25      In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157

26  (1989), the California Court of Appeal explained:

27         . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or
       procedure should be accompanied by an offer to pay the full amount of the debt for

28         which the property was security." . . . . This rule . . . is based upon the equitable maxim

1    that a court of equity will not order a useless act performed. . . . "A valid and viable
2    tender of payment of the indebtedness owing is essential to an action to cancel a voidable
     sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not
3    have redeemed the property had the sale procedures been proper, any irregularities in the
     sale did not result in damages to the plaintiffs. (Citations omitted.)

4    The complaint addresses failure to modify the Juarezes' loan and seeks damages, not equitable

5    relief to set aside the foreclosure sale. Given the absence of requested equitable relief, the tender rule

6    does not arise despite the complaint's indirect attack on the foreclosure which allegedly resulted from

7    failure to accomplish modification. The complaint's lack of claims for equitable relief suggests that the

8    Juarezes accept the property foreclosure and do not attempt to set it aside.

9                                    **No Private Right Of Action Under HAMP**

10   Suntrust further challenges the complaint's claims to the extent they rely on the Home Affordable

11   Modification Program ("HAMP") in that HAMP provides no private right of action.

12   A fellow district court explains the absence of a private right of action under HAMP:

13           On October 8, 2008, President Bush signed into law the Emergency Economic
     Stabilization Act of 2008, Pub.L. No. 110-343, 122 Stat. 3765 (codified 12 U.S.C. §
14   5201 et seq.) ("EESA"). Section 109 required the Secretary of the Treasury ("the
     Secretary") to take certain measures in order to encourage and facilitate loan
15   modifications. 12 U.S.C. § 5219. However, Section 109 did not create any private right
     of action against servicers for grievances relating to the EESA. *Ramirez v. Litton Loan*
16   *Serv.*, LP, 2009 WL 1750617, *1 (D. Ariz.2009); *Barrey v. Ocwen Loan Serv., LLC*,
     2009 WL 1940717, * 1 (D. Ariz.2009).

17           . . .

18

19           Nowhere in the HAMP Guidelines, nor in the EESA, does it expressly provide
     for a private right of action. Rather, Congressional intent expressly indicates that
20   compliance authority was delegated solely to Freddie Mac. By delegating compliance
     authority to one entity, Freddie Mac, Congress intended that a private cause of action was
21   not permitted. *See Reyes-Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir.2001)
     (reiterating that "the doctrine of expressio unis est exclusio alterius instructs that where
22   a law expressly describes a particular situation to which it shall apply, what was omitted
     or excluded was intended to be omitted or excluded.").

23

24   *Marks v. Bank of America, N.A.*, 2010 WL 2572988, at *5, 6 (D. Az. 2010); *see Pantoja v. Countrywide*

25   *Home Loans, Inc.*, 640 F.Supp.2d 1177, 1185 (N.D. Cal. 2009) ("Thus, the Court finds that there is no

26   implied private right to sue fund recipients under TARP," the Troubled Assets Relief Program enacted

27   under EESA and of which HAMP is a part.)

28           "[T]here is no express or implied private right of action to sue lenders or loan servicers for

violation of HAMP." *Cleveland v. Aurora Loan Services, LLC*, 2011 WL 2020565, at *4 (N.D. Cal. 2011); *see Manabat v. Sierra Pac. Mortg. Co.*, 2010 WL 2574161 at *11 (E.D. Cal. 2010) (dismissing plaintiff's wrongful foreclosure claim because there is no private right of action for HAMP violations against lenders that receive HAMP funds); *Simon v. Bank of Am., N.A.*, 2010 WL 2609436 at *7 (D. Nev. 2010) ("[C]ourts have consistently held that [HAMP] does not provide borrowers with a private cause of action against lenders for failing to consider their application for loan modification, or even to modify an eligible loan"); *see also Carrasco v. HSBC Bank USA, N.A.,* 2012 WL 646251, at 5 (N.D. Cal. 2012) (plaintiffs failed to demonstrate that HAMP requires "that a lender enter into a loan modification, as opposed to simply encouraging that lenders work with borrowers to avoid foreclosures").

Suntrust faults the complaint's reliance on HAMP, in particular, to support breach of contract or negligence claims. *See Marks*, 2010 WL 2572988 at *6 ("Plaintiff is precluded from asserting a private cause of action under the HAMP, even disguised as a breach of contract claim"); *Ming'ate v. Bank of America, N.A.*, 2011 WL 4590431, at *6 D. Minn. 2011) ("HAMP creates no duty for lenders to make loan modifications or to do so in a timely fashion; as a result, Plaintiffs' negligence claim is dismissed").

The Juarezes note that the complaint does not allege that Suntrust was bound to modify the loan under HAMP or that their claims arise out of HAMP. Given the Juarezes' concession that they do not pursue a private right of action under HAMP, any claim arising out of HAMP is subject to dismissal.

### Negligence

The complaint's (first) negligence claim alleges that Suntrust ignored the trial plan and "wrongfully claimed Plaintiffs were ineligible for loan modifications after repeatedly advising Plaintiffs they would receive a permanent modification." The negligence claim further alleges that Suntrust "breached its duty when it failed to be transparent regarding the documents they provided, failed to handle and maintain each of Plaintiffs' documents with reasonable care during the loan modification process, and mislead Plaintiffs into believing they were being considered for a permanent loan modification."

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."

*Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991). "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481, 56 Cal.Rptr.2d 756 (1996). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.*, 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

"The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516 (1997).

There is no actionable duty between a lender and borrower in that loan transactions are arms-length. A lender "owes no duty of care to the [borrowers] in approving their loan. Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (citing several cases). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53; *see Myers v. Guarantee Sav. & Loan Assn.*, 79 Cal.App.3d 307, 312, 144 Cal.Rptr. 616 (1978) (no lender liability when lender did not engage "in any activity outside the scope of the normal activities of a lender of construction monies").

"Public policy does not impose upon the Bank absolute liability for the hardships which may befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516. The success of a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any

information it may have had").  "It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991). Moreover, "loan servicers do not owe a duty to the borrowers of the loans they service." *Shepherd v. American Home Mortg. Services, Inc.*, 2009 WL 4505925, at *2 (E.D. Cal. 2009); *see Huerta v. Ocwen Loan Servicing, Inc.*, 2010 WL 728223, at *4 (N.D. Cal. 2010) ("a loan servicer has no fiduciary duty to a borrower when its involvement in the transaction does not exceed the scope of its conventional role as a loan servicer").

Turning to loan modification, "[n]umerous cases have characterized a loan modification as a traditional money lending activity, warranting application of the rule articulated in *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 283 Cal.Rptr. 53 (1991), that a financial institution in general owes no duty of care to a borrower." *Settle v. World Sav. Bank, F.S.B.*, 2012 WL 1026103, at *8 (C.D. Cal. 2012).  In *Alvarado v. Aurora Loan Services, LLC,* 2012 WL 4475330, at *6 (C.D. Cal. 2012), a fellow district judge explained:

> . . . offering loan modifications is sufficiently entwined with money lending so as to be considered within the scope of typical money lending activities. If money lending institutions were held to a higher standard of care by offering a service that could benefit borrowers whose circumstances have changed, the money lender would be discouraged from leniency and would assert their rights to reclaim the property upon the borrower's default. The conventional-moneylender test shall be sufficient to determine that there is no duty of care owed in servicing Plaintiff's mortgage loan and loan modification. As the Plaintiff is unable to establish a duty, it is unnecessary to discuss the elements of breach, causation, and damages.

Suntrust faults the complaint's absence of facts to support its actionable duty owed to the Juarezes let alone breach of such duty to cause damage. Suntrust explains that loan modification is intimately tied to lending and provides no duty to support a negligence claim given that "loan modification is nothing more than a renegotiation of loan terms."  Suntrust points to "no set of facts to expand Suntrust's role beyond the bounds of the normal set of relations between a borrower and a loan servicer and/or note holder."

The Juarezes clarify that their "legal theory is not that Suntrust owes a duty to Plaintiffs to actually modify the loan.  Rather, Suntrust had a duty to Plaintiffs to handle and process the loan modification with ordinary, reasonable care" and breached such duty by "unnecessarily elongating the loan modification process" to induce the Juarezes' 12 modified payments and to preclude them to sell

1   or refinance their property prior to foreclosure.  The Juarezes contend that Suntrust exceeded its

2   conventional lender role by mishandling their loan modification application.  The Juarezes accuse

3   Suntrust of mishandling underwriting documentation, providing false and inconsistent information, and

4   "dual tracking" the loan by moving forward with foreclosure.

5       Despite the Juarezes' citation to non-binding authorities, this Court is persuaded by *Alvarado*'s

6   logic that lending and modification are so intertwined to constitute typical lending activities and that

7   holding loan servicers to a higher standard would defeat modification goals by discouraging loan

8   servicers to entertain modification to avoid foreclosure. Further troubling is the Juarezes' ignorance and

9   attempt to circumvent their original loan obligations.  The gist of their position is that Suntrust was

10  bound to prevent the Juarezes' peril, which they attribute to delay and misinformation arising during the

11  modification process.  However, there are no facts that the Juarezes were precluded to seek other means

12  to attempt to avoid foreclosure.  In fact, the Juarezes' filed dubious bankruptcies to delay foreclosure.

13  The complaint's inferences are that the Juarezes' only option was loan modification, and inability and

14  delay to reach a modification decision fails to substantiate negligence, despite the Juarezes'  11 lower

15  modified payments which allowed them to remain in the property and to avoid higher original loan

16  payments.

17      The Juarezes lack a negligence claim based on Suntrust's lender and/or servicer roles, particularly

18  in the absence of a duty to forego foreclosure.  "No such duty exists . . . to determine the borrower's

19  ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay

20  by a borrower are for the lender's protection, not the borrower's."  *Renteria v. United States*, 452

21  F.Supp.2d 910, 922-923 (D. Ariz. 2006) (borrowers "had to rely on their own judgment and risk

22  assessment to determine whether or not to accept the loan").  "A commercial lender is not to be regarded

23  as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower."

24  *Sierra-Bay Fed.*, 227 Cal.App.3d at 334, 277 Cal.Rptr. 753.  Suntrust had "no interest in the loan" in its

25  role as loan servicer. *See Cleveland v. Deutsche Bank Nat. Trust Co.*, 2009 WL 250017, at *3 (S.D. Cal.

26  2009).  The Juarezes accepted the trial plan benefits and accepted risks that Suntrust would not qualify

27  them for a loan modification.

28      Moreover, a negligence claim does not rest on Suntrust's handling of the Juarezes' documents

16

to seek a loan modification.  A fellow judge of this Court explained that the trial plan "makes clear that providing the requested documents was simply a part of the application process, which plaintiff was willing to complete in the hope that BAC would modify his loan." *Grill v. BAC Home Loans Servicing LP,* 2011 WL 127891, at *4 (E.D. Cal. 2011).

Suntrust neither owed nor breached an actionable duty of care to the Juarezes arising from the Juarezes' dissatisfaction with loan modification and their failure to exercise other claimed measures to avoid foreclosure.  The complaint lacks facts of sufficient special circumstances to impose duties on Suntrust in that the complaint depicts an arms-length transaction, nothing more. The negligence claim fails, and no facts are apparent to warrant an attempt to amend.

### Unfair Business Practices

The complaint (second) UCL claim accuses Suntrust of never intending to provide the Juarezes "with a permanent loan modification" given Suntrust's goal "to keep loans in default and arrears for as long as possible before ultimately foreclosing to maximize fees and the payments it can extract" from the Juarezes.  The complaint characterizes Suntrust to engage in  "acts and practices" of:

    1.   "Failing to perform loan servicing functions consistent with its responsibilities" to the Juarezes;

    2.   "Failure to permanently modify loans and/or provide alternatives to foreclosure, routinely demanding information it already had and failing to communicate accurately or consistently with Plaintiffs about the status of their loan modification application and trial modification plan";

    3.   "Making inaccurate calculations and determinations of Plaintiffs' eligibility for loan modifications"; and

    4.   "Engaging in acts and practices that prolong [the] loan modification process."

Suntrust challenges the complaint's failure to allege a sufficient injury to support a UCL claim in that the Juarezes were obligated to make payments and collection of the payments is not an unfair business practice.

"Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr.

718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200).  The UCL establishes three varieties of unfair competition - "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group, Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000).  "A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

California Business and Professions Code section 17204 limits standing to bring a UCL claim to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition."  "This provision requires [plaintiff] to show that she has lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution, *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 959-60 (9th Cir.2009), and also requires a 'causal connection' between [defendant's] alleged UCL violation and her injury in fact, *Hall v. Time Inc.*, 158 Cal.App.4th 847, 70 Cal.Rptr.3d 466, 471-72 (2008)." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-1205 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 1817 (2011).

A "plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has: (1) expended money due to the defendant's acts of unfair competition . . .; (2) lost money or property . . . ; (3) been denied money to which he or she has a cognizable claim . . ." *Hall*, 158 Cal.App.4th at 855, 70 Cal.Rptr.3d 466 (citations omitted).

Business and Professions Code section 17203 addresses UCL relief and provides in pertinent part:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

"In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's remedies are 'generally limited to injunctive relief and restitution.'" *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).

Suntrust faults a UCL based on failure to modify the Juarezes' loan in that Suntrust was not

obligated to do so.  Suntrust characterizes the Juarezes' alleged damages as "a direct result of their failure to satisfy obligations pursuant to the loan agreement."  Suntrust concludes that the UCL claim fails with the complaint's other claims.

To respond, the Juarezes identify their alleged UCL damages as lost trial plan payments, excess interest, late fees, escrow fees, other unnecessary charges, credit damage, and loss of the property.

This Court agrees with Suntrust that the Juarezes fail to demonstrate UCL damages.  Their trial plan payments were not lost but rather were lower than their original loan payments and permitted the Juarezes to remain in the property.  The Juarezes refused Suntrust's modification offer made after expiration of the trial plan, acceptance of which may have avoided or decreased their purported damages of excess interest, late fees, escrow fees and other unnecessary charges.  The complaint lacks allegations that the Juarezes actually paid out of pocket such expenses.  The complaint lacks facts to support the Juarezes' credit damage or loss of property attributable to a UCL violation in that their inability to pay their loan caused such results, and the complaint alleges no facts of the Juarezes' sufficient income to qualify for the modification to which they claim they are entitled.  The complaint's UCL claim is subject to dismissal.

### Debt Collection

The complaint's (third) RFDCPA claim alleges that Suntrust attempted to collect the Juarezes' debt and misrepresented its intent to modify their loan and the amount and status of the debt by prompting the Juarezes' to make trial modification payments.

Suntrust challenges the RFDCPA claim in that Suntrust does not qualify as a debt collector and foreclosure is not debt collection under the RFDCPA.

The RFDCPA's purpose is "to prohibit debt collectors from engaging in unfair or deceptive practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts."  Cal. Civ. Code, § 1788.1(b).  The RFDCPA "protects consumers from debt collection practices for 'consumer debts,' created through transactions in which 'property, services or money is acquired on credit . . . primarily for personal, family, or household purposes.'"  *Pittman v. Barclays Capital Real Estate, Inc.*, 2009 WL 1108889, at *3 (S.D. Cal. 2009) (quoting Cal. Civ. Code, § 1788.2(e)-(f)).

1    The RFDCPA defines "debt collector" as "any person who, in the ordinary course of business,

2  regularly, on behalf of himself or herself or others, engages in debt collection."  Cal. Civ. Code, §

3  1788.2(c).  "[F]oreclosure does not constitute debt collection under the RFDCPA."  *Izenberg v. ETS*

4  *Services, LLC*, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008).  The "law is clear that foreclosing on a

5  property pursuant to a deed of trust is not a debt collection within the meaning of the RFDCPA or the

6  FDCA [Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq.]."  *Gamboa v. Trustee Corps*,

7  2009 WL 656285, * 4 (N.D. Cal. 2009).  As this Court has explained previously, "[l]ogic suggests that

8  non-judicial foreclosure is not a debt collector's act under California Civil Code section 1788.2(c)."

9  *Swanson v. ECM Mortgage Corp.*, 2009 WL 3627925 (E.D. Cal. 2009).

10    Suntrust faults the complaint's failure to identify precise RFDCPA "prohibited practices,"

11  especially given the absence of allegations that Suntrust was authorized only to collect payments after

12  the Juarezes' default.  Suntrust challenges the complaint's lack of facts to characterize Suntrust as a

13  debtor collector under the RFDCPA in that "Suntrust was the lender and servicer of the loan before the

14  default, and therefore, is not deemed a debt collector for its activities on the same account after it goes

15  into default."

16    The Juarezes respond that "Suntrust engaged in improper conduct in the course of servicing

17  Plaintiffs mortgage loan ultimately causing Plaintiffs damages," including improper fees, increased

18  interest, and credit damage.  The Juarezes equate "debt collection activities" with "billing and collection

19  of trial payments; making representations as to the status and amount of debt; and making

20  representations of the character and amount of debt."

21    Suntrust is correct that the complaint fails to substantiate Suntrust as a debt collector to subject

22  it to a RFDCPA claim.  This Court is unconvinced that Suntrust's loan modification activities amounts

23  to debt collection subject to the RFDCPA despite the end result of foreclosure on the property.  The

24  Juarezes attempt to stretch RFDCPA liability to a point not contemplated by the RFDCPA.  This Court

25  is not prepared to qualify Suntrust's alleged loan modification deficiencies as debt collection violations

26  under the RFDCPA.  The complaint's failure to identify a specific RFDCPA violation is a fatal flaw.

27  A purported  RFDCPA claim fails and is subject to dismissal.

28  / / /

**Breach Of Contract**

The complaint's (fourth) breach of contract claim alleges that the "parties agreed" that Suntrust would modify the Juarezes' loan if the Juarezes "made timely and full payments" under the trial plan and provided requested documents, and if Suntrust determined that the Juarezes were qualified for loan modification.  The breach of contract claim further alleges that Suntrust breached the agreement when it denied loan modification and sent a February 26, 2011 letter to reject modification "because of insufficient income."

Suntrust faults the complaint's absence of facts to support breach of contract elements in that the trial plan "did not guarantee a final loan modification, even if all payments were made under the plans."

### *Elements*

"The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom."  *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178, 80 Cal.Rptr.3d 6 (2008).  "To form a contract, an 'offer must be sufficiently definite . . . that the performance promised is reasonably certain.'"  *Alexander v. Codemasters Group Limited*, 104 Cal.App.4th 129, 141. 127 Cal.Rptr.2d 145 (2002).

Essential elements to contract existence are: (1) "[p]arties capable of contracting;" (2) "[t]heir consent;" (3) a "lawful object;" and (4) a "sufficient cause or consideration."  Cal. Civ. Code, § 1550.

"A written contract may be pleaded either by its terms – set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference – or by its legal effect. In order to plead a contract by its legal effect, plaintiff must allege the substance of its relevant terms." *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1489, 49 Cal.Rptr.3d 227 (2006) (internal citations omitted).

Suntrust faults the complaint's failure to demonstrate "the existence of a contract" given the complaint's reliance on the trial plan, which "is not a contract for a permanent modification."  Suntrust points to the trial plan's section 2.G.:

> I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii)

> the Modification Effective Date has passed.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this plan. . . .

Suntrust further points to the trial plan's section 3., which includes several conditions to modification, including Suntrust's determination of the Juarezes' qualification and sending a modification agreement. Suntrust notes that the deed of trust for the Juarezes' loan does not provide for loan modification to render unclear "what contract plaintiffs believe forms the basis for this cause of action."  Suntrust concludes that the complaint fails to plead Suntrust's breach of "an enforceable agreement based on the plain words of the HAMP trial plan."

In *Nungaray v. Litton Loan Servicing, LP*, 200 Cal.App.4th 1499, 1504, 135 Cal.Rptr.3d 442 (2011), the California Court of Appeal addressed a trial plan identical to the Juarezes' trial plan and explained:

> As a matter of law, there was no contract here. The plain and clear language of paragraph 2G states that the Plan "is not a modification of the Loan Documents" and the documents will not be modified unless the Nungarays [plaintiffs] "meet all of the conditions required for modification," including the Nungarays' receipt of a "fully executed copy of a Modification Agreement."

To defend the complaint's breach of contract claim, the Juarezes essentially argue that they fulfilled trial plan requirements to entitle them to permanent modification.  The Juarezes, however, ignore the clear trial plan terms.  The trial plan did not obligate Suntrust to provide a permanent modification, which was to be agreed upon and executed separately from the trial plan.  In the absence of such obligation, Suntrust breached no contract, especially given the trial plan's admonition "that Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this plan."  Suntrust found the Juarezes unqualified and did not offer a permanent modification.  The complaint lacks facts, and none are apparent, that the Juarezes were entitled to loan modification.

### Statute Of Frauds

Suntrust further challenges a breach of contract claim based on oral representations "because giving effect to an oral promise to modify the deed of trust would violate the statute of frauds."

In *Clark v. Countrywide Home Loans, Inc.*, 732 F.Supp.2d 1038, 1043-1044 (E.D. Cal. 2010),

1  a fellow judge of this Court addressed oral representations as to real property:

2          Certain types of contracts are invalid unless memorialized by a written document
   signed by the party against whom the contract is being enforced. Cal. Civ.Code § 1624.
3  Mortgages and deeds of trust are subject to the statute of frauds. *Secrest v. Sec. Nat'l
   Mortg. Loan Trust 2002–2*, 167 Cal.App.4th 544, 552, 84 Cal.Rptr.3d 275 (2008). "An
4  agreement to modify a contract that is subject to the statute of frauds is also subject to the
   statute of frauds" and must be in writing. *Id.* at 553, 84 Cal.Rptr.3d 275; *see also Basham*
5  *v. Pac. Funding Group*, 2010 WL 2902368 (E.D. Cal. July 22, 2010) (dismissing a claim
   that defendant breached an oral contract to provide plaintiffs with a loan modification
6  because, under the statute of frauds, "absent a writing, there can be no contract, much
   less a breach of contract."); *Justo v. Indymac Bancorp, et al.*, 2010 WL 623715 (E.D.
7  Cal. Feb. 19, 2010) (plaintiff's claim that defendants breached an oral contract to modify
   his loan and cancel the foreclosure sale was barred by the statute of frauds). A written
8  contract may not be modified by an oral agreement, unless that oral agreement is
   memorialized in writing and signed by the parties. Cal. Civ. Code § 1698.

9
           Here, the alleged promise for a loan modification is subject to the statute of
10  frauds. Absent a written agreement to modify the loan, any claim based upon an oral
   contract to modify the loan is barred by the statute of frauds. *See Secrest*, 167
11  Cal.App.4th at 552, 84 Cal.Rptr.3d 275.

12
    "A modification of a contract is a change in the obligations of a party by a subsequent mutual
13
    agreement of the parties." *Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal.App.4th 544, 553,
14
    84 Cal.Rptr.3d 275 (2008). "A contract coming within the statute of frauds is invalid unless it is
15
    memorialized by a writing subscribed by the party to be charged or by the party's agent." *Secrest*, 167
16
    Cal.App.4th at 552, 84 Cal.Rptr.3d 275 (citing Cal. Civ. Code, § 1624)). An "agreement by which a
17
    lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest
18
    in real property comes within the statute of frauds." *Secrest*, 167 Cal.App.4th at 547, 84 Cal.Rptr.3d
19
    275. "An agreement to modify a contract that is subject to the statute of frauds is also subject to the
20
    statute of frauds." *Secrest*, 167 Cal.App.4th at 5553, 84 Cal.Rptr.3d 275.
21
           The Juarezes raise no challenge to Suntrust's statute of fraud points to support further dismissal
22
    of the breach of contract claim.
23
                                        ***Damages***
24
           Suntrust further faults the complaint's lack of facts to support breach of contract damages despite
25
    allegations that the Juarezes made 12 monthly payments of $791.  Suntrust points to the trial plan's
26
    section 2.E.:
27
           When the Lender accepts and posts a payment during the Trial Period it will be without
28         prejudice to, and will not be deemed a waiver of, the acceleration of the loan or

foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents.

Suntrust explains that the reduced trial plan payments did not waive foreclosure or cure the Juarezes' default and that the Juarezes retained the property during the "substantially reduced" trial plan payments.

The Juarezes raise no meaningful challenge to the absence of their breach of contract damages to warrant further dismissal of the breach of contract claim.

### CONCLUSION AND ORDER

For the reasons discussed above, the complaint's claims are legally barred and cannot be revived by allegation of other facts. As such, this Court:

1.     DISMISSES with prejudice this action; and

2.     DIRECTS the clerk to enter judgment in favor of defendant Suntrust Mortgage, Inc. and against plaintiffs Adan Juarez and Rosa Juarez and to close this action.

IT IS SO ORDERED.

**Dated:   May 13, 2013**            **/s/  Lawrence J. O'Neill**
                                     UNITED STATES DISTRICT JUDGE